In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00157-CV**

_____

**NEW PENN FINANCIAL LLC D/B/A SHELLPOINT MORTGAGE SERVICING AND MTGLQ INVESTORS, L.P., Appellants**

**V.**

**BEVERLY SALVAGIO AND JAMES DAVID SALVAGIO, Appellees**

**On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-201,268**

**MEMORANDUM OPINION**

NewRez LLC f/k/a New Penn Financial LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") and MTGLQ Investors L.P. (MTGLQ) appeal the trial court's grant of James David and Beverly Salvagio's motion for summary judgment and denial of their summary judgment motion.[1] Appellants raise four issues,

---

[1] For purposes of clarity, when referring to the Salvagios individually, we use their first names.

1

asserting that: (1) MTGLQ can assert its breach of contract and judicial foreclosure counterclaims under Texas's counterclaims saving statute; (2) res judicata bars the Salvagios' claim; (3) the loan was decelerated; and (4) the trial court erred in dismissing their breach of acknowledgment counterclaim because no summary judgment motion addressed it. Because we conclude that res judicata bars the Salvagios' declaratory action based on the statute of limitations as a matter of law, we reverse and render in part, and reverse and remand in part, the judgment of the trial court.

## I. Background

The parties have a lengthy history involving a protracted home mortgage dispute arising from the borrowers' 2011 default. This is the second lawsuit the Salvagios filed attempting to avoid non-judicial foreclosure. The trial court granted the Salvagios' motion for summary judgment based on the statute of limitations in which they argued that the prior servicer, Bank of America ("BOA"), accelerated the note in November 2011, and the statute of limitations expired in November 2015.

### A. First Lawsuit

James and Fay M. Bourgeois[2] took out the loan in 2006 in the principal amount of $131,100, secured by a note and deed of trust in favor of Bank of America

---

[2] Bourgeois was not a party to the underlying litigation or this appeal.

("BOA").[3] Beginning in early 2011, the borrowers failed to make payments when due, and BOA sent a notification letter regarding the default and amounts necessary to cure. When the borrowers failed to cure the default, BOA accelerated the note and scheduled a non-judicial foreclosure sale. In response, in December 2011, the Salvagios sued BOA and the trustees seeking to enjoin the non-judicial foreclosure proceedings and sale. Ultimately, BOA entered into a Rule 11 Agreement which stated, "Defendants will pull down their notice of foreclosure and will not attempt a foreclosure in January 2012."[4] In that lawsuit, despite amending their petition as late as December 1, 2017, the Salvagios never raised the statute of limitations even though they now assert the note became stale in November 2015. On December 4, 2017, the trial court dismissed the Salvagios' lawsuit with prejudice.

## B. Current Lawsuit

In June 2017, the deed of trust was assigned to MTGLQ, and Shellpoint became the loan servicer. In January 2018, Shellpoint and MTGLQ sent a notice of acceleration to James, Beverly, and Bourgeois which explained that because the "[p]ayment of past due balance on the Debt has not been received . . . the Mortgagee has elected to ACCLERATE the maturity of the Debt[,]" advising the foreclosure

---

[3] In August of 2008, James and Bourgeois unilaterally conveyed the property to Beverly by general warranty deed.

[4] Between November 2011 and June 2015, BOA and another loan servicer sent at least three reinstatement calculations for less than the full accelerated amount.

was scheduled for February 6, 2018, and enclosing "Notice of Substitute Trustee Sale[.]" Emails established that following this acceleration, James requested information about loan modification options from Shellpoint.

On February 2, 2018, the Salvagios responded to the non-judicial foreclosure proceedings by initiating the current lawsuit and filed their "Demand to Show Cause and Petition for Injunction, Declaratory Action and Permanent Restraining Order." They made claims for wrongful notice of foreclosure, dual tracking, failure to validate debt, asserting the statute of limitations has expired, and seeking declaratory relief.[5] The Salvagios sought to enjoin the non-judicial foreclosure proceedings, as well as economic damages, punitive and exemplary damages, treble damages for intentional violations, equitable relief, and costs. Although the Salvagios never requested service of citation on MTGLQ or Shellpoint,[6] the lenders answered, asserting, among other things, that res judicata and collateral estoppel barred the Salvagios' claims, and they later counterclaimed for judicial foreclosure and breach of contract.

### i. MTGLQ and Shellpoint's First Summary Judgment Motion

Appellants filed a traditional motion for summary judgment raising the affirmative defense of res judicata and argued it barred the Salvagios' claims. The

---

[5] They also named Margie Allen, the substitute trustee, as a defendant.
[6] The record shows the Salvagios only requested service of citation be issued for Margie Allen.

trial court partially granted the Appellants' motion for summary judgment, specifically, it dismissed the Salvagios' claims for "wrongful notice of foreclosure" and their alleged Finance Code violations, as well as the Salvagios' "declaratory action," with prejudice. The trial court specifically reserved the right to rule on the statute of limitations issue.

### ii. MTGLQ and Shellpoint's Second Summary Judgment Motion

Appellants then filed a second summary judgment motion asserting that res judicata precluded the Salvagios' statute of limitations claim because the Salvagios could have raised it in the prior litigation. They further argued they were entitled to all amounts owed on the loan and for foreclosure against the property securing the loan. Appellants' summary judgment evidence included: (1) affidavit of Cheryl Rathke of Shellpoint averring Salvagio had been in default since May 2011, had not cured, and the amount due on the loan as of December 21, 2018 was $236,831.02 plus interest accruing at 6.625 percent; (2) note signed by James; (3) deed of trust signed by James and Bourgeois; (4) assignments of deed of trust; (5) notice of default; (6) notices of acceleration; (7) general warranty deed conveying the property from James and Bourgeois to Beverly; (8) the Salvagios' Original Petition in cause number A-191,438; (9) the Salvagios' First Amended Complaint in cause number A-191,438; (10) the Salvagios' Second Amended Complaint in cause number A-191,438; and (11) Order of Dismissal in cause number A-191,438.

5

### iii. The Salvagios' Summary Judgment Motion and Response

After the trial court partially granted MTGLQ and Shellpoint's first summary judgment motion and Appellants filed their second motion, the Salvagios amended their petition and dropped all claims except the declaratory action based on the statute of limitations. They argued BOA first accelerated the note on November 10, 2011, and the four-year statute of limitations expired on November 10, 2015. They then filed a traditional motion for summary judgment based on the statute of limitations and only attached BOA's original acceleration notice as evidence. The Salvagios also responded to Appellants' motion for summary judgment contending the statute of limitations barred Shellpoint and MTGLQ's claims, right to foreclose on the property, and right to seek damages under the note. The Salvagios further argued that res judicata did not bar their declaratory judgment based on the statute of limitations, because it did not arise until after the first suit's dismissal. The evidence supporting their summary judgment response included the trial court's partial summary judgment order, BOA's November 10, 2011 acceleration notice, their first amended petition, and an attorney's affidavit verifying exhibits.

### iv. MTGLQ and Shellpoint's Response to the Salvagios' Summary Judgment Motion

Appellants responded to the Salvagios' summary judgment motion, arguing BOA decelerated the note in 2011 when it agreed not to proceed with the foreclosure as evidenced by the prior servicers' reinstatement letters allowing payment of

arrearages rather than the full accelerated amount. Appellants included the following evidence in support of their response to the Salvagios' summary judgment motion: (1) Shellpoint representative Jean Knowles's affidavit authenticating evidence and explaining Shellpoint was the current servicer, describing the assignments of the deed of trust, describing what James owed on the note and that he had been in default since 2011; (2) the note and deed of trust; (3) assignments of the deed of trust showing they had been transferred to MTGLQ; (4) notices of default; (5) notices of acceleration and sale; (6) rule 11 agreement from prior lawsuit pulling down foreclosure; (7) reinstatement letters between 2011 and 2015 from various servicers following the initial acceleration showing reinstatement amount owed as less than the fully accelerated loan amount; (8) email exchange between Salvagio and Shellpoint regarding loan modification; (9) general warranty deed from James and Bourgeois to Beverly; (10) the Salvagios' pleadings in the first lawsuit; (11) the TRO stopping foreclosure in the first lawsuit; and (12) the order dismissing the Salvagios' claims with prejudice in the first lawsuit. Appellants again argued that res judicata barred the Salvagios' statute of limitations claim because it arose out of the same transaction and the Salvagios could have raised it in the first lawsuit.

After the parties filed their summary judgment motions and responses, MTGLQ and Shellpoint amended their answer seven days before the summary

7

judgment hearing and asserted counterclaims for judicial foreclosure, breach of contract, and breach of acknowledgment of claim. [7, 8]

### v. Trial Court's Judgment

The trial court denied MTGLQ and Shellpoint's summary judgment motion but granted the Salvagios' summary judgment motion, ruling that MTGLQ and Shellpoint "TAKE NOTHING by way of their causes of action[.]" Subsequently, MTGLQ and Shellpoint filed a motion to reconsider, which the trial court denied.

## II. Standard of Review

We review the grant of a traditional summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (citation omitted). If both parties move for summary judgment and the trial court grants one motion and denies the other, we review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citation omitted). We then render the judgment the trial court should have rendered. *Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009) (citations omitted).

---

[7] MTGLQ and Shellpoint's motion for summary judgment only addressed the counterclaims for judicial foreclosure and breach of contract, it did not address any cause of action for breach of acknowledgement of claim.

[8] *See* Tex. R. Civ. P. 63 (discussing permissible timeframe to amend pleadings); *Sosa v. Central Power & Light*, 909 S.W.2d 893, 895 (Tex. 1995) (interpreting rule 63 affording the right to amend without leave when filed exactly one week before summary judgment hearing).

"A party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) (citing Tex. R. Civ. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). We consider the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We indulge all reasonable inferences and resolve any doubts in the nonmovant's favor. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) (citations omitted).

### III. Analysis

#### A. Res Judicata

We turn first to Appellants' argument that res judicata bars the Salvagios' claim, therefore, the trial court erred in granting the Salvagios' motion for summary judgment and in denying Appellants' motion. The Salvagios counter that when BOA attempted to foreclose the first time, the statute of limitations did not bar BOA's claims, but in this case, when the Salvagios filed suit, Shellpoint's right to foreclose on the Note was already barred by the statute of limitations.

Res judicata, or claim preclusion, bars subsequent actions by parties and those in privity with them on matters litigated in a previous suit and on claims "'which,

9

through the exercise of diligence, could have been litigated in a prior suit.'" *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992) (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992)); *see also Hallco Tex., Inc. v. McMullen Cty.*, 221 S.W.3d 50, 58 (Tex. 2006). Courts apply a "transactional approach" to res judicata that requires claims arising from the same subject matter to be litigated in a single lawsuit. *Hallco*, 221 S.W.3d at 58; *Barr*, 837 S.W.2d at 631. The transactional approach requires us to examine the factual bases the cases present, rather than the legal theories, and whether the cases "share the same nucleus of operative facts." *Samuel v. Fed. Home Loan Mortg. Corp.*, 434 S.W.3d 230, 234 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citation omitted). Legal precedent recognizes that res judicata promotes the finality of judgments, and prevents "needless, repetitive litigation[.]" *Hallco*, 221 S.W.3d at 58 (citing *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 345 (2005); *John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288–89 (Tex. 2002)). A party relying on the affirmative defense of res judicata must prove: (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

10

### i. Prior Determination on the Merits

It is settled that "'a dismissal with prejudice functions as a final determination on the merits.'" *Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex. 1999) (per curiam) (quoting *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991)). In 2017, in the previous lawsuit, the trial court dismissed the Salvagios' claims with prejudice. This operated as an adjudication on the merits. *See id.* Appellants provided summary judgment evidence establishing this, including the pleadings in the prior lawsuit and the dismissal order.

### ii. Identity of Parties or Privity

A party can show privity exists in three ways: (1) it can control an action even if it is not a party to it; (2) its interests can be represented by a party to the action; or (3) it can be a successor in interest, deriving its claims through a party to the prior action. *Amstadt*, 919 S.W.2d at 653 (citations omitted). Examples include, "but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008). Appellants provided summary judgment evidence of the assignment to MTGLQ, which included: (1) Rathke's affidavit averring that the loan had been assigned to MTGLQ, and Shellpoint serviced the loan on its behalf; and (2) the "Assignment of Deed of Trust" documents. This evidence shows the parties were in privity for res judicata purposes. *See id.*; *see also Amstadt*, 919 S.W.2d at 653.

11

### iii. Claims that Could Have Been Raised in the First Action

The last element of res judicata is at the center of the parties' dispute. They disagree about whether the Salvagios' claim for declaratory relief based on the statute of limitations could have been raised in the first action. Appellants argue the Salvagios' first lawsuit and the second both revolve around the Salvagios' attempts to avoid foreclosure after they defaulted on the same note. The Salvagios contend that they did not plead the statute of limitations in their first lawsuit because when the prior servicer attempted to initiate foreclosure proceedings the statute had not yet run. They further assert that they did not do so, because "[the prior servicer] did not counterclaim for a judicial foreclosure so there was no reason to assert an affirmative defense."

The facts show that in the second suit, the Salvagios' pleaded that the cause of action accrued in May 2011, and the four-year statute of limitations expired in May 2015.[9] The summary judgment evidence established that the trial court did not dismiss the Salvagios' prior lawsuit until December 2017. The operative facts that precipitated the Salvagios' filing both lawsuits were: (1) they were in default on the same note; (2) the servicer accelerated and attempted to foreclose on the same note;

---

[9] In the Salvagios' response to MTGLQ and Shellpoint's summary judgment motion, they contend that the note "was first accelerated [on] November 10, 2011, and therefore, [the] statute of limitations ran on November 10, 2015." Their amended petition alleges the November dates.

and (3) the Salvagios initiated litigation seeking to avoid foreclosure. *See Everheart v. Citibank*, N.A., CV H-13-2752, 2015 WL 12805172, at *3 (S.D. Tex. Mar. 30, 2015) (concluding that issues in prior and current lawsuit dealing with same property, note, deed of trust, and foreclosure proceedings arose from the "same nucleus of operative facts").

The summary judgment evidence established that the Salvagios seek a declaration in the current litigation that Appellants are precluded from foreclosing because the statute of limitations allegedly expired in November 2015; however, the summary judgment evidence also conclusively establishes their first lawsuit was not dismissed until December of 2017. For over two years before the dismissal, between November 2015 and December 2017, the Salvagios failed to assert that the statute of limitations barred foreclosure. Had the Salvagios exercised diligence in their attempts to avoid foreclosure in the first lawsuit, they could have sought a similar declaration regarding the statute of limitations at any point between November 2015 and the lawsuit's 2017 dismissal with prejudice. *See Hallco*, 221 S.W.3d at 58; *see also Underwood v. Ocwen Loan Service*, 829 Fed. Appx. 678, 680–81 (5th Cir. 2020) (not designated for publication) (Texas res judicata law barred debtors seeking to avoid foreclosure from raising statute of limitations in subsequent litigation when they failed to raise statute of limitations in first lawsuit although it allegedly expired seven months before final judgment). "The issue of the running of the statute of

limitations was an argument that could have been, but was not, made in the earlier litigation." *Underwood*, 829 Fed. Appx. at 681.

We note that the Salvagios argue on appeal that there was no need for them to assert statute of limitations in the first lawsuit because the servicer did not counterclaim for judicial foreclosure. This argument lacks merit. In the present lawsuit, the Salvagios raised the issue of limitations in their original petition, prior to MTGLQ and Shellpoint answering or counterclaiming for judicial foreclosure. If the Salvagios' decision to raise limitations depended upon MTGLQ and Shellpoint's counterclaim for judicial foreclosure, it stands to reason that they would not have raised it in their original petition before Appellants asserted any counterclaims.

The Salvagios also cite to *McKeehan v. Wilmington Savings Fund Society, FSB*, for the proposition that res judicata did not operate as a bar for their claim that the statute of limitations expired. *See* 554 S.W.3d 692, 701 (Tex. App.—Houston [1st Dist.] 2018, no pet.). We find *McKeehan* distinguishable. First, it dealt with a forbearance agreement where the borrowers had been making payments. *See id.* at 700–01. In that case, the lender initiated a judicial foreclosure proceeding and objected to certain evidence the borrowers offered based on res judicata. *See id.* Our sister court explained that the lender was not using res judicata as an affirmative defense but rather "as a weapon to prevent the [borrowers] from asserting their own defense of payment." *See id.* at 701. Here, the Salvagios overlook that they initiated

14

the second lawsuit against the Appellants and sought declaratory relief based on the statute of limitations after the trial court dismissed with prejudice their first lawsuit which sought to avoid foreclosure on the same note. In response to the second lawsuit seeking declaratory relief based on the statute of limitations, Appellants raised the affirmative defense of res judicata.

Because Appellants conclusively established that res judicata bars the Salvagios' declaratory action and claims for avoidance based on the statute of limitations, the trial court erred in granting the Salvagios' summary judgment motion and denying MTGLQ and Shellpoint's motion for summary judgment. We sustain Appellants' second issue.

**B. Counterclaims**

MTGLQ and Shellpoint moved for summary judgment on their counterclaims for judicial foreclosure and for breach of contract. They seek damages for costs and expenses in enforcing the note and deed of trust, a judgment to recover all amounts due and owing under the loan, attorney's fees, expenses, and asserted they were not waiving the right to seek a personal judgment for any deficiency of foreclosure sale proceeds in satisfying the note. Fact issues remain with respect to MTGLQ and Shellpoint's judicial foreclosure and breach of contract causes of action.[10]

---

[10] For purposes of res judicata, the lender's claims are not compulsory counterclaims. *See Perry v. Cam XV Trust*, 579 S.W.3d 773, 778 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("[W]hen 'a home-equity lien allows for alternate

Specifically, the summary judgment evidence did not establish damages in the form of costs, expenses, or attorney's fees or any deficiency amounts.

Summary judgment may only be granted upon grounds expressly raised in a summary judgment motion. *See* Tex. R. Civ. P. 166a(c). The trial court erred by disposing of MTGLQ and Shellpoint's counterclaim for breach of acknowledgment of counterclaim, as that was not addressed in any party's summary judgment motion. *See Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983) (per curiam); *see also G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (per curiam) ("Granting a summary judgment on a claim not addressed in the summary judgment motion therefore is, as a general rule, reversible error.").

We sustain Appellants' fourth issue. Considering our disposition of these two issues, we need not address Appellants' remaining issues. *See* Tex. R. App. P. 47.1.

### IV. Conclusion

Having determined that the Appellants conclusively established res judicata bars the Salvagios' assertion of statute of limitations against recovery on the indebtedness, we reverse the trial court's judgment granting the Salvagios' declaratory relief on the statute of limitations and denial of Appellants' summary

---

remedies on the mortgagor's default,' the lender is not required to seek foreclosure in a suit brought by the mortgagor or else forfeit its foreclosure rights." *See id.* (quoting *Steptoe v. JP Morgan Chase Bank*, 464 S.W.3d 429, 434 (Tex. App.— Houston [1st Dist.] 2015, no pet.). To allow otherwise would be to permit the mortgagor to dictate the lenders' remedy. *See id.* at 778–79.

judgment motion based on res judicata and render judgment that the Salvagios' take nothing. We reverse the trial court's take nothing judgment on MTGLQ and Shellpoint's counterclaims, and we remand those affirmative claims to the trial court for further proceedings consistent with this opinion.

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on May 18, 2020
Opinion Delivered April 8, 2021

Before Kreger, Horton, and Johnson, JJ.