Sherry Radack, Chief Justice
After a bench trial, the trial court signed a final judgment granting appellee, Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, as Trustee for Pretium Mortgage Acquisition Trust ["Wilmington"], judicial foreclosure on the real property belonging to appellants, Greg and Heidi McKeehan. In three issues on appeal, the McKeehans contend that the trial court erred in (1) denying their motion for directed verdict, (2) finding that the McKeehans owed at least $185,871 plus interest because Wilmington did not present evidence of its method for calculating damages, and (3) granting declaratory relief *695 based on the theory that Wilmington performed all conditions precedent necessary to obtain judicial foreclosure. In two cross-points on appeal, Wilmington contends that the trial court erred by (1) not excluding the McKeehans' defensive evidence that they were not in default because such a "claim" was precluded by res judicata and (2) reducing the McKeehans' indebtedness by $32,000 based on the erroneous admission of such evidence. We affirm.
BACKGROUND
In January 2007, Greg A. McKeehan executed a Texas Home Equity Note ["the Note"] in favor of ABN Amro Mortgage Group, Inc. ["Amro"] in order to refinance his homestead. McKeehan, his wife, Heidi, and the lender simultaneously entered into a security agreement ["Deed of Trust"], pledging the homestead as non-recourse security for the Note. Later in 2007, Amro merged with Citimortgage, Inc. ["Citimortgage"] and Citimortgage began servicing the loan and collecting payments. In November 2015, Citimortgage assigned the loan to Pretium Mortgage Credit Partners I Loan Acquisition, which assigned the loan to Wilmington.[1]
In 2010, McKeehan lost his job and fell behind on his mortgage payments. In 2011, Wilmington sought an expedited, non-judicial foreclosure of the loan pursuant to Texas Rule of Civil Procedure 736.[2] The proceeding was dismissed after the parties entered into a Stipulated Special Forbearance Plan Agreement ["the Forbearance Agreement"]. Under the terms of the Forbearance Agreement, the McKeehans were to make payments of $1,170.00 for the months of July, August, September, October, and November 2011, followed by a "balloon payment" of $26,518.03 in December 2011. The agreement specified that the "borrower is relieved from making the regular monthly payment from July 1, 2011 through December 1, 2001[,]" and provided that, beginning January 1, 2012, the borrowers "shall resume making regular scheduled monthly payments." The agreement also provided that "[i]f after all of the above payments have been made, and the loan is still delinquent, the Borrower must make arrangements with CMI prior to the expiration of the terms as stated in paragraph 3 to cure the delinquency."
McKeehan testified that, in November 2011, while he was still paying the forbearance payments, Wilmington sent a notice indicating that it intended to foreclose. He further testified that after he made the December balloon payment, Wilmington told him that he was still approximately $8,000 in default. He contended that he "tried" to make his regular January payment, but that Wilmington refused to accept it. He admitted that he had made no further payments after the December 2011 balloon payment.
On February 2, 2012, Wilmington notified the McKeehans that their loan was in default and that, to cure the default, they owed "$8,253.10 including $1,768.10 in late charges and $2,518.07 in delinquency related expenses." On August 15, 2012, Wilmington accelerated the note and notified the McKeehans that the entire debt of $155,359.99 was due.
*696 In May 2013, Wilmington filed a second Rule 736 Application for expedited foreclosure. The McKeehans responded by filing an action in the 268th District Court, in which they claimed that the loan agreement violated the Texas Constitution. As a result of this suit, the second Rule 736 Application did not proceed to foreclosure.
The McKeehans' case in the 268th District Court was removed to federal court and assigned to the United States District Court for the Southern District of Texas, Houston Division. Wilmington did not file a counterclaim for judicial foreclosure in the removed case. Instead, it filed a motion to dismiss, contending that the McKeehans' constitutional claims were time-barred. The federal court agreed, dismissing the McKeehans' case with prejudice. See McKeehan v. Citimortgage, Inc. , No. H-13-3765, 2014 WL 12599835 (S.D. Tex. Mar. 13, 2014).
In October 2014, Wilmington filed a third Rule 736 application for non-judicial disclosure, which the court denied. Thereafter, Wilmington filed the present case seeking judicial foreclosure. After a bench trial, the trial court entered a judgment in favor of Wilmington, finding that the McKeehans had breached the loan agreement and were indebted to Wilmington in the amount of $185,871.51, and permitting judicial foreclosure by Wilmington.
The trial court did not file findings of fact and conclusions of law. Although it appears from the record that the McKeehans' requested and submitted proposed findings of fact and conclusions of law, the trial court did not sign them. Neither party complains on appeal about the trial court's failure to file findings of fact and conclusions of law.
Both sides have filed notices of appeal. The McKeehans contend that the trial court erred in (1) denying their motion for directed verdict, (2) finding that the McKeehans owed at least $185,871.51 to Wilmington, and (3) finding that Wilmington had performed all conditions precedent necessary to obtain judicial foreclosure. Wilmington contends that the trial court erred by (1) not excluding the McKeehans' defensive evidence based on res judicata, and (2) reducing the McKeehans' indebtedness by $32,000. We address each issue respectively.
DENIAL OF DIRECTED VERDICT
In their first issue on appeal, the McKeehans contend that:
[T]he trial court erred in denying the homeowners' motion for directed verdict and [not] excluding the Lender's evidence of damages where it failed to disclose its method of calculating the amount owed to support its claims, pursuant to Tex. R. Civ. P. 193.6
Specifically, the McKeehans argue that "[t]he Lender's evidence on damages should have been excluded because it failed to disclose any amount and method of calculating economic damages in response to the McKeehans' discovery requests."[3] The McKeehans further argue that, had Wilmington's damages evidence been excluded, Wilmington's entire case would fail because it would be unable to prove an element of its case, i.e., damages. Wilmington responds that the McKeehans *697 waived this objection by not making it timely. We agree with Wilmington.
During its case-in-chief, Wilmington admitted three exhibits,[4] with multiple subparts, in support of its foreclosure claim, and then rested without calling witnesses. When Wilmington offered its exhibits for admission, the McKeehans raised two objections: (1) that the business-records affidavit supporting the records contained a legal conclusion and (2) that the printouts of payoff and per diem print screens were hearsay. The trial court overruled these objections, to which the McKeehans' counsel responded, "I think those are the only two that I have any issues with." The trial court then admitted Exhibits 1, 2, and 3, along with all of their subparts. Wilmington then rested.
The McKeehans then moved for a directed verdict, arguing that the Exhibit 1 should be excluded because Wilmington had not responded to their request for disclosure regarding how it had calculated the McKeehans' default. However, the McKeehans did not raise non-disclosure as a reason for excluding Exhibit 1 at the time it was offered and admitted, thus the argument that it should have been disclosed is waived. See Moran v. Mem'l Point Prop. Owners Ass'n, Inc., 410 S.W.3d 397, 407 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (holding complaints on appeal must comport with objections raised in trial court to preserve error); Kheir v. Progressive Co. Mutual Ins. Co. , No 14-04-00694-CV, 2006 WL 1594031, at *8 (Tex. App.-Houston [14th Dist.] June 13, 2006, pet. denied) (mem. op.) (holding party waived error by not timely objecting based on Rule 193.6 because "[a] motion for directed verdict-filed after all the evidence was introduced-was the wrong vehicle to raise the complaint and was too late to accomplish what they desired.").
Because the McKeehans' first issue on appeal is premised on the assumption that Wilmington's evidence should have been excluded pursuant to Rule 193.6-an argument the McKeehans' waived by not raising it until their Motion for Directed Verdict-we must conclude that Exhibit 1 was properly admitted to support Wilmington's damages and overrule the McKeehans' first issue on appeal.
MCKEEHANS' SUFFICIENCY OF THE EVIDENCE CHALLENGES
In their second issue on appeal, the McKeehans contend that:
[T]he trial court erred in finding that the homeowners owed at least $185,871.51 plus interest where the lender failed to present evidence of its method for calculating damages to support its breach of contract and foreclosure claims.
In their third issue on appeal, the McKeehans contends that:
*698 [T]he trial court erred in granting declaratory relief based on the theory that the lender performed all conditions precedent necessary to seek enforcement of the loan agreement by judicial foreclosure.
Both of these issues attack the sufficiency of the evidence to support the trial court's judgment in Wilmington's favor. In one sentence, the McKeehans' state that "the trial court's findings are not supported by legally or factually sufficient evidence." However, they argue that the evidence conclusively establishes that they were not in default of the loan because they had made all of the payments required by the forbearance agreement, and that "the trial court's findings are erroneous as a matter of law." Additionally, the McKeehans' prayer requests that we reverse the trial court's judgment and render a judgment in their favor, which is an appropriate rendition for a successful legal sufficiency challenge. Accordingly, we construe their issues as challenges to the legal sufficiency of the evidence. See Regal Fin. Co., Ltd. v. Tex. Star Motors , Inc., 355 S.W.3d 595, 603 (Tex. 2010) (noting that evidence is legally insufficient when it "conclusively establishes the opposite of the vital fact") (quoting Merrell Dow Pharms., Inc. v. Havner , 953 S.W.2d 706, 711 (Tex. 1997) ).
Standard of Review
In a nonjury trial when no findings of fact or conclusions of law are requested or filed, the judgment implies all findings of fact necessary to support it. Johnson v. Oliver , 250 S.W.3d 182, 186 (Tex. App.-Dallas 2008, no pet.). But, if, as in this case, the appellate record includes a clerk's record and a reporter's record, implied findings are not conclusive and may be challenged for legal sufficiency on appeal. Id.
When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding. See Exxon Corp. v. Emerald Oil & Gas, Co. , 348 S.W.3d 194, 215 (Tex. 2011). When a party attacks the legal sufficiency of an adverse finding on an issue on which he did have the burden of proof, such as an affirmative defense, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. Dow Chem. Co. v. Francis , 46 S.W.3d 237, 241 (Tex. 2001).
We will sustain a no-evidence challenge if the record shows (1) a complete absence of evidence of a vital fact, (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. Serv. Corp. Int'l v. Guerra , 348 S.W.3d 221, 228 (Tex. 2011).
We are mindful that the trial court, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. City of Keller v. Wilson , 168 S.W.3d 802, 819 (Tex. 2005) ; Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty., Inc. , 393 S.W.3d 492, 505-06 (Tex. App.-Dallas 2013, pet. denied). As such, the trial court may choose to believe one witness and disbelieve another. See City of Keller , 168 S.W.3d at 819. It is the fact finder's role to resolve conflicts in the evidence, and we may not substitute our judgment for that of the fact finder's. See Helping Hands Home Care, Inc. , 393 S.W.3d at 506. We must review the evidence in a light favorable to the verdict. See City of Keller , 168 S.W.3d at 819.
*699 Was there Legally Sufficient Evidence that the Loan was in Default?
To show entitlement to foreclosure, the Bank was required to prove, (1) a deed of trust, (2) that the debtor was in default, (3) that an amount of the indebtedness was due and unpaid, and (4) that the property subject to the deed of trust lien was the same property upon which foreclosure was sought. See Kyle v. Countrywide Home Loans , Inc., 232 S.W.3d 355, 362 (Tex. App.-Dallas 2007, pet. denied). As evidence that the loan was in default, the bank admitted Exhibit 1 and all of its subparts. This evidence included the deed of trust and a sworn affidavit from a foreclosure manager and custodian of records that the loan was in default because of the McKeehans' failure to make payments when due. This is legally sufficient evidence to show Wilmington's entitlement to judgment on its claims against the McKeehans. See id. (holding that summary-judgment evidence consisting of sworn affidavit by bank's foreclosure specialist attesting to borrower's default and deed of trust which gave bank right to seek judicial foreclosure in event of default was sufficient to entitle bank to judgment as matter of law against borrower).
Nevertheless, the McKeehans argue that their completion of the forbearance payments brought the loan current, so the Lender's acceleration letter of February 1, 2012 "was not a proper notice of intent to accelerate and there was no effective acceleration." The McKeehans' argument hinges on their assumption that their successful completion of the forbearance payments meant that their loan was no longer in default. However, the Forbearance Agreement was to dispose of delinquencies occurring before June 2011.[5] Successful completion of the Forbearance Agreement would have no bearing on subsequent defaults by the McKeehans. McKeehan admitted that he had made no payments for the two months prior to the February notice of intent to accelerate. Therefore, the trial court could have concluded that, even if the McKeehans' successful completion of the forbearance payments brought the loan current as of June 2011, the McKeehans were nonetheless in default for events occurring after June 2011, specifically, the missed payments for January 2012 and thereafter.
Because the Bank's evidence proved that it was entitled to judicial foreclosure because of the McKeehans' default, and the McKeehans' evidence regarding the forbearance agreement did not disprove their default as a matter of law, we find that there was legally sufficient evidence of default.
Accordingly, we overrule issue two.
Was there Legally Sufficient Evidence to Find Against the McKeehans on their Affirmative Defenses of Prior Material Breach?
In issue three, the McKeehans contend the trial court erred in ruling against them on their affirmative defense of prior material breach. See Tony Gullo Motors I, L.P. v. Chapa , 212 S.W.3d 299, 314 (Tex. 2006) (referring to prior material breach as an affirmative defense). Specifically, the McKeehans contend that the Bank breached the contract first by (1) not applying the forbearance payments to the debt, and (2) refusing to accept any payments after the December 1, 2011 payment. Thus, we must consider whether the McKeehans proved, as a matter of law, that Wilmington did not apply their forbearance payments to their debt and refused their payments thereafter.
*700 In support of their claim that Wilmington did not apply the forbearance payments to the debt, the McKeehans introduced Defendant's Exhibit 9, a consolidated note report showing their payment history on the note. Specifically, McKeehan testified at trial that the term "unappl" by several of his payments indicated to him that the amounts were unapplied to the loan. However, as pointed out by Wilmington, the same document shows that during the time of the forbearance agreement, while the McKeehans were making payments, the principal and negative escrow amounts were actually reduced, thereby indicating that the payments were being applied to the debt, but were insufficient to bring the debt current by completion of the agreement. Because there is some evidence to support both the McKeehans' and Wilmington's positions, and the trial court made no findings of fact and conclusions of law, we hold that the McKeehans did not prove that the bank misapplied their forbearance payments as a matter of law.
Regarding their argument that the bank breached the agreement by refusing to accept any further payments after December 1, 2011, we note that the only proof of such refusal was McKeehan's own testimony. When asked at trial whether he had any evidence that he tried to make payments and that Wilmington refused them, McKeehan responded, "My word." We must remember that the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. City of Keller , 168 S.W.3d at 819. Absent findings of fact and conclusions of law, we must presume, in support of the verdict, that the trial court found McKeehan's testimony on this issue to be not credible.
Because the McKeehans did not prove their affirmative defense of prior material breach as a matter of law, the evidence legally supports the trial court's finding against them on this issue.
We overrule their third issue on appeal.
WILMINGTON'S ISSUES ON APPEAL
Wilmington filed its own notice of appeal and has raised two issues on appeal, which we address respectively.
Does Res Judicata Prevent the McKeehans from Raising a Payment Defense?
In their first issue on appeal, Wilmington contends that:
[t]he trial court abused its discretion by permitting McKeehan to put on evidence relating to a 2011 forbearance agreement between McKeehan that the Trustee's predecessor. Trustee objected to certain evidence, including that relitigation of the issues was barred by res judicata.
Specifically, Wilmington argues that, when the McKeehans sued Wilmington's predecessor in 2013, alleging that the lien against their home was unconstitutional, they could have, and should have, included claims that their loan was not in default, because they had complied with the terms of the Forbearance Agreement. Wilmington further contends that, since the McKeehans did not raise the issue of payment in the 2013 suit, which was terminated when their claims were dismissed based on the statute of limitations, they should not be allowed to raise that issue in this suit.
A party claiming the affirmative defense of res judicata must prove (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity; and (3) a second action based on the same claims as were or could have been raised in the first *701 action. Travelers Ins. Co. v. Joachim , 315 S.W.3d 860, 862 (Tex. 2010).
The issue here is that Wilmington is not relying on the doctrine of res judicata as an affirmative defense-it is using the doctrine as a weapon to prevent the McKeehans from asserting their own defense of payment. The McKeehans are not bringing an "action" against Wilmington; they are asserting a defense to Wilmington's foreclosure claims. We recognize that Wilmington was not required to raise its right to foreclosure as a compulsory counterclaim in the McKeehans' 2013 lawsuit. See Steptoe v. JPMorgan Chase Bank , N.A., 464 S.W.3d 429, 434 (Tex. App.-Houston [1st Dist.] 2014, no pet.) (holding lender not required to have asserted compulsory counterclaim for foreclosure in borrower's prior action in order to preserve foreclosure claim in present action). However, Wilmington's decision not to seek foreclosure in the 2013 suit should not prevent the McKeehans from defending themselves against foreclosure when Wilmington decided to seek it in the present action.
Wilmington has cited no authority, and we have found none, for using the doctrine of res judicata in this manner. Accordingly, we overrule Wilmington's first issue on appeal.
Was there Legally Sufficient Evidence to Support the Amount of Indebtedness Found by the Trial Court?
In their second issue on appeal, Wilmington contends that:
[t]he trial court erred by reducing the amount of McKeehan's indebtedness by $32,000.00 based on testimony that should have been excluded as irrelevant, barred by rules of law, and/or conclusory and, therefore, constitutes no evidence.
Having already disposed of Wilmington's re judicata objection to the admission of evidence about the Forbearance Agreement, we consider its alternative argument, i.e., that it proved as a matter of law that the amount of the McKeehans' indebtedness was $217,871.51, not the $185,871.51 the trial court found. Specifically, Wilmington claims that it proved, as a matter of law, that it properly applied the McKeehans' forbearance payments and that the amount of the McKeehans' indebtedness should not have been reduced by the $32,000 they paid under the Forbearance Agreement.
Essentially, Wilmington contends that the evidence unequivocally showed that it complied with the terms of the Forbearance Agreement by applying the McKeehans' forbearance payments and calculating the McKeehans' indebtedness properly at $217,871.51. This argument is essentially the flip-side of the McKeehans' third issue on appeal and fails for the same reason.
The McKeehans introduced Defendant's Exhibit 9 showing the "unappl" by several of his payments, which indicated to him that the amounts were not applied to the loan. Wilmington argued that Exhibit 9 shows that, during the time of the Forbearance Agreement, while the McKeehans were making payments, the principal and negative escrow amounts actually decreased, thereby indicating that the payments were being applied to the debt, but were insufficient to bring the debt current by completion of the agreement. Because there is some evidence to support both the McKeehans' and Wilmington's positions, and the trial court made no findings of fact and conclusions of law, we hold that Wilmington did not prove that it properly applied the forbearance payments as a matter of law.
Because the amount of damages the trial court awarded fell within the range supported by the evidence, we hold that it was *702 legally sufficient. See Gulf States Utils. Co. v. Low , 79 S.W.3d 561, 566 (Tex. 2002) (stating that, for purposes of legal sufficiency review, factfinder has discretion to award damages within range of evidence presented at trial); Hertz Equip. Rental Corp. v. Barousse , 365 S.W.3d 46, 57 (Tex. App.-Houston [1st Dist.] 2011, pet. denied) (stating that, for purposes of legal and factual sufficiency review, factfinder has discretion to award damages within range of evidence presented at trial, so long as rational basis exists for its calculation).
Accordingly, we overrule Wilmington's second issue on appeal.
CONCLUSION
We affirm the trial court's judgment.

For purposes of this opinion, the current noteholder and all of its predecessors will be referred to as "Wilmington."

Rule 736.1 of the Texas Rules of Civil Procedure provides "for an expedited order allowing the foreclosure of a lien listed in Rule 735." Tex. R. Civ. P. 736.1(a). Rule 735.1"allow[s] foreclosure of a lien containing a power of sale in the security instrument." Tex. R. Civ. P. 735.1.

See Tex. R. Civ. P. 193.6(a), which provides:
A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed ... unless the court finds that: (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Exhibit 1 was a Business Record Affidavit, with five subparts: (A) the Texas Home Equity Note [the "Note"], (B), the Texas Home Equity Security Instrument [the "Deed of Trust"], (C) Merger Documents showing the original mortgagee, ABN AMRO Mortgage Group, Inc., merged with Citimortgage, Inc., and assigned the McKeehans' Deed of trust to Citimortgage, (D) a February 2, 2012 Notice of Default sent by Citimortgage to the McKeehans, and (E) printouts of payoff and per diem print screens.
Exhibit 2 was the Affidavit of Becky Howell, the Chief Administrative Officer of Foreclosure, who was responsible for default servicing activities relating to the McKeehans' property. Howell provided evidence regarding the notices of default and acceleration provided to the McKeehans.
Exhibit 3 was a March 13, 2014 Dismissal Order, signed by U.S. District Court Judge Nancy Atlas, accompanied by a Memorandum and Order.

The Forbearance Agreement states that "[t]he total amount needed to bring the loan current through and including the June [2011] payment is the following sum[.]"