

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-22-00364-CV

_____

ANDREA MONIQUE BUTLER,

                                                                Appellant

 v.

STATE OF TEXAS FOR THE
PROTECTION OF DEBRA LYNN MORRIS,

                                                                Appellee

_____

**From the 21st District Court
Burleson County, Texas
Trial Court No. 30,691**

_____

## MEMORANDUM  OPINION

_____

In four issues, appellant, Andrea Monique Butler, complains about a protective

order issued in favor of appellee, the State of Texas for the protection of Debra Lynn

Morris.  We affirm.

### Jurisdiction

In her first issue, Butler contends that the 21st Judicial District Court did not have

jurisdiction to hear this matter and enter the complained-of protective order because the

application for the protective order was filed originally in the 335th Judicial District Court, and because the matter was not transferred to the 21st Judicial District Court.

We first note that Butler has not directed us to authority supporting her contention that the 21st Judicial District Court lacked jurisdiction to issue a protective order in this case. *See* TEX. R. APP. P. 38.1(i). Nevertheless, section 24.122(a) of the Texas Government Code provides that the 21st Judicial District is comprised of Bastrop, Burleson, Lee, and Washington counties. TEX. GOV'T CODE ANN. § 24.122(a). Section 24.481 of the Texas Government Code states that the 335th Judicial District is also comprised of Bastrop, Burleson, Lee, and Washington counties. *Id.* § 24.481. This case arose in Burleson County, which has two district courts—the 21st Judicial District Court and the 335th Judicial District Court.

Rule 3.10 of the Local Rules for the 21st and 335th Judicial District Court, which has been approved by the Texas Supreme Court, is entitled "EXCHANGE OF BENCHES AND CASES," and provides the following:

> 3.10    The Courts may at any time exchange cases and benches to accommodate their dockets or to expedite the court's trial pursuant to Order Affecting the Exchange of Benches for the District Courts and County Court at Law Court of Bastrop County, Texas. The District Judges of the 21st and 335th District Courts may also exchange to accommodate their dockets or to expedite the courts' trials.

Additionally, section 24.003 of the Texas Government Code provides, in relevant part, that:

(a) This section applies only to counties with two or more district courts.

(b) Unless provided otherwise by the local rules of administration, a district judge in the county may:

> (2) hear and determine any case or proceeding pending in another district court in the county without having the case transferred;

> (3) sit for another district court in the county and hear and determine any case or proceeding pending in that court;

> . . .

(c) A district judge in the county may hear and determine any part or question of any case or proceeding pending in any of the district courts, and any other district judge may complete the hearing and render judgment in the case or proceeding. A district judge may hear and determine motions, including motions for new trial, petitions for injunction, applications for the appointment of a receiver, interventions, pleas in abatement, dilatory pleas, and all preliminary matters, questions, and proceedings, and may enter judgment or order on them in the court in which the case or proceeding is pending without transferring the case or proceeding. The district judge in whose court the matter is pending may proceed to hear, complete, and determine the matter, or all or any part of another matter, and render a final judgment. A district judge may issue a restraining order or injunction that is returnable to any other district court.

TEX. GOV'T CODE ANN. § 24.003(a), (b)(2)-(3), (d).

Because this case originates in Burleson County, which has two district courts, pursuant to section 24.003 of the Texas Government Code and Rule 3.10 of the Local Rules for the 21st and 335th Judicial District Courts, the trial judge for the 21st Judicial District Court was authorized to hear and enter the protective order in question, even though the application for the protective order was filed in the 335th Judicial District Court and was not transferred to the 21st Judicial District Court. *See id*. § 24.003(a), (b)(2)-(3), (d); *see also*

LOCAL RULES FOR THE 21ST AND 335TH JUDICIAL DISTRICT COURTS OF BASTROP, BURLESON, LEE, AND WASHINGTON COUNTIES, STATE OF TEXAS, at https://www.txcourts.gov/All_Archived_Documents/SupremeCourt/AdministrativeOrders/miscdocket/05/05901900.pdf (last visited Feb. 28, 2023). We therefore conclude that Butler's contention that the 21st Judicial District Court lacked jurisdiction to sign the protective order in question is without merit. Accordingly, we overrule Butler's first issue.

### Notice of the Hearing on the Protective Order

In her second issue, Butler asserts that the trial court erred by conducting a hearing and entering the protective order without providing her proper notice of the hearing.

On June 2, 2022, the Burleson County Attorney filed an application for protective order and request for a temporary ex parte protective order, alleging that Butler was stalking Morris. On June 3, 2022, the trial court granted a temporary ex parte protective order in favor of Morris and, among other things, ordered Butler to appear for a show-cause hearing on June 24, 2022, and ordered the Clerk of the Court to provide notice to Butler. On June 20, 2022, Butler was served in person by a Burleson County Constable with a copy of the application and the temporary protective order, which included the following notice:

> **AN APPLICATION FOR PROTECTIVE ORDER HAS BEEN FILED IN THE COURT STATED IN THIS NOTICE ALLEGING THAT YOU HAVE COMMITTED FAMILY VIOLENCE. YOU MAY EMPLOY AN ATTORNEY TO DEFEND YOURSELF AGAINST THIS ALLEGATION.**

**YOU OR YOUR ATTORNEY MAY, BUT ARE NOT REQUIRED TO, FILE A WRITTEN ANSWER TO THE APPLICATION. ANY ANSWER MUST BE FILED BEFORE THE HEARING ON THE APPLICATION. IF YOU RECEIVE THIS NOTICE WITHIN 48 HOURS BEFORE THE TIME SET FOR THE HEATING, YOU MAY REQUEST THE COURT TO RE-SCHEDULE THE HEARING NOT LATER THAN 14 DAYS AFTER THE DATE SET FOR THE HEARING. IF YOU DO NOT ATTEND THE HEARING, A DEFAULT JUDGMENT MAY BE TAKEN AND A PROTECTIVE ORDER MAY BE ISSUED AGAINST YOU.**

(Emphasis in original.)

On June 24, 2022, the day the show-cause hearing was originally scheduled, the trial court rescheduled the hearing and extended the temporary order until August 1, 2022, at the request of Butler's attorney, Jolanda Jones. On July 26, 2022, the trial court granted a second request to extend the protective order filed by Butler's attorney. The basis for this request was to allow time for witnesses on another protective order against Butler to testify in this case. As a result, the August 1, 2022 show-cause hearing was rescheduled to August 15, 2022, and the protective order was extended.

On August 15, 2022, the case was called for trial. Butler appeared pro se and noted the following:

> THE COURT: And, Ms. Butler, are you ready?
>
> MS. BUTLER: Well, no, sir, because I haven't had time to hire counsel. My attorney and I, we only paid for the other case that was—we were hoping to be heard today and not this one.
>
> THE COURT: She told us she wasn't representing you.

MS. BUTLER:        No, she's not.  No.  She's way too expensive.  I'm going to hire a different attorney for this one.

MS. DESKI:         Your Honor, this was filed on June 2nd.

THE COURT:         That's what I'm looking at.  I'm going to proceed with the hearing, ma'am.

Butler did not object to the trial court proceeding with the hearing, nor did she file a verified motion for continuance.

At the outset of our analysis of this issue, we note that Butler has not cited any authority in support of her contention in this issue.  *See* TEX. R. APP. P. 38.1(i).  Moreover, Butler's issue lacks merit because she appeared and participated at the hearing that resulted in the protective order, and she did not file a verified motion for continuance. *See Manning v. North*, 82 S.W.3d 706, 714-15 (Tex. App.—Amarillo 2002, no pet.) ('When a party participates in a hearing without notifying the court of any complaint, that party has waived its right to object to a lack of notice and may not raise the question for the first time on appeal."); *see also Hadeler v. Hadeler*, No. 04-06-00459-CV, 2007 Tex. App. LEXIS 4969, at *2 (Tex. App.—San Antonio June 27, 2007, no pet.) (mem. op.) ("A party that receives untimely notice must file a motion for continuance or raise the notice complaint during the hearing to preserve error; any error resulting from the trial court's failure to provide the parties proper notice under Rule 245 is waived if a party proceeds to trial and fails to object to the untimely notice." (citation omitted)).  We overrule Butler's second issue.

**Sufficiency of the Evidence Supporting the Protective Order**

In her third issue, Butler argues that no credible or believable evidence was submitted to support the granting of a protective order. In her brief on this issue, Butler challenges the legal and factual sufficiency of the evidence showing that she stalked Morris and that the protective order is necessary and appropriate for the protection of Morris and her family or household.

STANDARD OF REVIEW

We review the sufficiency of a trial court's findings supporting a protective order under the same standards we use in evaluating the sufficiency of the evidence following a jury verdict. *See Lei Yang v. Yuzhuo Cao*, 629 S.W.3d 666, 670 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *see also Mahmoud v. Jackson*, No. 05-21-00302-CV, 2022 Tex. App. LEXIS 4135, at *3 (Tex. App.—Dallas June 16, 2022, no pet.) (mem. op.). When, as here, appellant attacks the legal sufficiency of an adverse finding on an issue on which she did not have the burden of proof, she must demonstrate that no evidence supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). We will sustain a legal-sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vita fact. *City of Keller v. Wilson*, 168 S.W.3d

802, 810 (Tex. 2005). We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id.* at 822.

When a party attacks the factual sufficiency of an adverse finding on an issue on which she did not have the burden of proof, she must demonstrate that the adverse finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *see Estrada v. Cheshire*, 470 S.W.3d 109, 120 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). In conducting a factual-sufficiency review, we examine, consider, and weigh all evidence that supports or contradicts the factfinder's determination. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

The trial court, as the factfinder in a bench trial, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See City of Keller*, 168 S.W.3d at 819; *see McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 698 (Tex. App.—Houston [1st Dist.] 2018, no pet.). The trial court may choose to believe one witness and disbelieve another. *McKeehan*, 554 S.W.3d at 698; *see City of Keller*, 168 S.W.3d at 819. It is the factfinder's role to resolve conflicts in the evidence, and we may not substitute our judgment for that of the factfinder. *See McKeehan*, 554 S.W.3d at 698.

APPLICABLE LAW

The trial court entered its protective order under article 7A of the Texas Code of Criminal Procedure.[1]  The Code of Criminal Procedure grants a trial court authority to issue a protective order "without regard to the relationship between the applicant and the alleged offender" if the applicant is a victim of certain crimes, including stalking.  *See* Act of May 10, 2011, 82nd Leg., R.S., ch. 135, § 2, 2011 Tex. Gen. Laws 640, 640 (repealed 2019).  A trial court "shall issue a protective order" if it finds that "there are reasonable grounds to believe that the applicant is the victim of . . . stalking."  *See* Act of May 10, 2011, 82nd Leg., R.S., ch. 135, § 4, 2011 Tex. Gen. Laws 640, 641 (repealed 2019).  "Stalking" is a criminal offense under the Texas Penal Code.  *See* TEX. PENAL CODE ANN. § 42.072.

A person commits the offense of stalking if that person "on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically ay another person, knowingly engages in conduct" that:

(1) constitutes an offense under Section 42.07, or that the actor knows or reasonably should know the other person will regard as threatening:

    (A) bodily injury or death for the other person;

    (B) bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or

---

[1] Although article 7A of the Texas Code of Criminal Procedure was repealed in 2019, most of the provisions that are relevant in this proceeding were left intact and recodified in article 7B of the Texas Code of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. ANN. arts. 7B.001(a)(1), 7B.003(b).  Butler does not complain about this on appeal.

(C) that an offense will be committed against the other person's property;

(2) causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person to:

    (A) fear bodily injury or death for himself or herself;

    (B) fear bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship;

    (C) fear that an offense will be committed against the person's property; or

    (D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

*Id.* § 42.072(a).

Before the trial can enter a protective order, it must hold a hearing to determine "whether there are reasonable grounds to believe that the applicant is the victim of . . . stalking." *See* Act of May 10, 2011, 82nd Leg., R.S., ch. 135, § 4, 2011 Tex. Gen. Laws 640, 641 (repealed 2019).

DISCUSSION

Here, Morris, her husband James Johnson, and Corporal Charles Sleeth of the Caldwell Police Department testified regarding repeated instances of conduct that Butler

engaged in over the course of three years that constituted stalking. Morris testified that Butler used to babysit Johnson's autistic daughter, Morris's stepdaughter, who was eighteen years old at the time of the hearing. Morris recounted that Butler began harassing her in 2019, with a call to Johnson's phone that Morris answered. In that phone call, Butler allegedly cursed and threatened Morris by stating "if [Morris] was with [Johnson] for his money, then she—and she found out, she would beat my A-S-S." This call occurred before Morris and Johnson married. Thereafter, Butler repeatedly went to Johnson's house cursing and yelling at Morris. Morris also testified that she gets "unknown calls that—just holding the phone. I can hear breathing on the phone and the TV. I can't say that it's Ms. Butler."

Prior to marrying Johnson, Morris lived in an apartment, and Butler would drive by the apartment and curse at Morris. Now that Morris lives in a house with Johnson, Butler drives by and "just lets her window down and just looks. She don't really say anything." Morris emphasized that the house she lives in with Johnson is not on a main street and there is nothing by her house. Morris later described an incident occurring in May 2022, where Butler "waited on me at a stop sign. When I made it to the stop sign, she swung her car out preventing me from driving my car, stops and tells me to follow her so she can take care of me like she'd been needing to do." Morris called law enforcement and thereafter sought a protective order. In response to further questioning, Morris testified that Butler stalked her on a regular basis a few times a month and that a

protective order was needed for her safety and the safety of her children, especially considering her children had been present when some of the incidents occurred.

Corporal Sleeth testified that he was aware of a criminal trespass warning that was issued for the residence where Morris lives. The warning involved Butler. Corporal Sleeth was also aware of approximately forty complaints about Butler "following people or some kind of road rage incident or a form of harassment." Corporal Sleeth then stated that he believes that Butler has been stalking Morris and that a protective order is needed. As the custodian of records for the Caldwell Police Department, Corporal Sleeth described State's Exhibits 1 and 2 as calls for service. State's Exhibit 1 provided as follows:

> jpineda: rp adv that she was at the light at 21 and Fm 2000 [16:59:04]
>
> jpineda: rp adv that andrea butler came around her almost hit her [16:59:39]
>
> jpineda: rp adv that she stopped for a sec because she didnt [sic] think traffic would stop and butler went around her in the intersection as they were turning [17:00:37]
>
> jpineda: butler is in a black linc [17:00:55]
>
> jpineda: went down 36 S [17:01:05]
>
> . . .
>
> jpineda: 2nd rp james johnson called and wants a report about this inccident [sic] . . .

State's Exhibit 2 described suspicious activity at Morris's house at 12:30 a.m.: "rp adv her dogs are barking and sounds like someone is walking close to her home [00:24:17]."

Johnson testified that many of the stalking incidents occurred while he was at work. However, he did recall an incident in November 2019, when he called law enforcement because Butler was in his backyard "underneath our carport." He also noted that Morris called him crying and upset when the incidents of stalking occurred.

Butler called two witnesses, her mother, Darlene Burns, and her thirteen-year-old son, Michael Butler. Burns testified that for most of May 2022, Butler's black Lincoln "was parked at Groce's Auto here in Caldwell." Burns also denied there being any feud between Butler and Morris. On cross-examination, Burns acknowledged that Butler's black Lincoln was not parked at Groce's Auto the entire month of May.

Michael recounted an incident where he was riding with Butler and where Morris "aggressively drove toward our vehicle inches away from hitting me." He further testified that he had never seen Butler stalk or harass Morris or Morris's daughter.

As the sole judge or the credibility of the witnesses, the trial court was free to accept or reject the testimony of the witnesses presented by the parties. *See City of Keller*, 168 S.W.3d at 819; *see also McKeehan*, 554 S.W.3d at 698. Viewing the evidence under the appropriate standards, we cannot say that the evidence is too weak to support the trial court's finding that Butler engaged in conduct constituting stalking and that a protective order is necessary, nor can we say that the findings are so against the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. *See* Act of May 10, 2011, 82nd Leg., R.S., ch. 135, § 4, 2011 Tex. Gen. Laws 640, 641 (repealed 2019); TEX. PENAL

CODE ANN. § 42.072; *see also City of Keller*, 168 S.W.3d at 810, 822; *Cain*, 709 S.W.2d at 176. Accordingly, we conclude that the evidence is legally and factually sufficient to support the findings in the protective order. We overrule Butler's third issue.

**Allegation of False Testimony**

In her fourth issue, Butler contends that the State secured the protective order after presenting false testimony in violation of Butler's right to due process. In making this contention, Butler directs us to inconsistencies in the evidence to show that Morris lied. She also directs us to two affidavits that were attached to her motion for new trial.

By pointing out inconsistencies in the evidence to show that Morris lied, Butler ostensibly asks this Court to re-weigh the evidence. We are not permitted to do so. *See Child v. Leverton*, 210 S.W.3d 694, 698 (Tex. App.—Eastland 2006, no pet.) ("[A]lthough an appellate court might have reached a different result than the trial court, it is not the job of an appellate court to reweigh the evidence and reverse to get that preferred result. A reviewing court should give great deference to the trial court's judgment." (citation omitted)). As stated earlier, the trial court was the sole judge of the credibility of the witnesses and the weight to accord their testimony. *See City of Keller*, 168 S.W.3d at 819; *see also McKeehan*, 554 S.W.3d at 698. Moreover, it is the factfinder's, not the appellate court's, role to resolve conflicts in the evidence, and we may not substitute our judgment for that of the factfinder. *See McKeehan*, 554 S.W.3d at 698.

Furthermore, Butler reliance on two affidavits attached to her motion for new trial are not persuasive given that: (1) neither are evidence that was before the trial court when the decision was made to grant the protective order; (2) neither were admitted into evidence at the hearing on the motion for new trial; and (3) Butler does not specifically challenge the denial of her motion for new trial by operation of law. Accordingly, we conclude that Butler's contention in this issue lacks merit. We therefore overrule Butler's fourth issue.

## Conclusion

Having overruled all of Butler's issues on appeal, we affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Smith
Affirmed
Opinion delivered and filed March 29, 2023
[CV06]

