

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-24-00651-CV

Nikolaj **ZBIKOWSKI**,
Appellant

v.

Sean **FLUEGGE**,
Appellees

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-CI-13055
Honorable Kevin Henderson, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
            Irene Rios, Justice
            Adrian A. Spears II, Justice

Delivered and Filed: December 10, 2025

AFFIRMED AS MODIFIED

Pro se appellant Nikolaj Zbikowski appeals a two-year protective order issued against him for the protection of appellee Sean Fluegge, his brother-in-law, and Stasia Zbikowski, his sister and Fluegge's wife. Zbikowski's appellate brief presents multifarious issues that are difficult to comprehend. We construe Zbikowski's arguments to include a challenge to (1) the issuance of a temporary protective order because he did not receive notice of a hearing and no hearing was conducted, and (2) the sufficiency of the evidence to support the trial court's granting of the

protective order. For the reasons below, we modify the final protective order and affirm as modified.

## BACKGROUND

Police arrested Zbikowski in October 2019 following a physical altercation involving Zbikowski, Fluegge, and Stasia. Zbikowski, Fluegge, Stasia, and Gale—Zbikowski's and Stasia's mother—lived together in Gale's house. In June 2024 and pursuant to section 82.002 of the Texas Family Code, the Bexar County Criminal District Attorney's Office filed an application for a protective order on behalf of Fluegge naming Zbikowski as the respondent. *See* TEX. FAM. CODE ANN.§ 82.002(d), (e).

On August 27, 2024, the trial court conducted a hearing at which Fluegge, Stasia, Gale, and Zbikowski, acting pro se, testified. After considering all the evidence, the court issued an oral ruling finding "the elements of the protective order have been met, and [the court is] granting a protective order for a period of two years."

The trial court then issued the written protective order the same day, finding, among other things, Fluegge and Zbikowski were members of the same family or household, and family violence occurred. The court prohibited Zbikowski from engaging in several enumerated acts, and it set the duration of the protective order for a period of two years, or until August 27, 2026. Stasia, in addition to Fluegge, was named as a protected person.

Following the trial court's issuance of the protective order, Zbikowski filed a motion seeking to vacate the order, which was overruled by operation of law. This appeal ensued.

## COMPLAINTS REGARDING A TEMPORARY PROTECTIVE ORDER

We first address Zbikowski's numerous complaints concerning a temporary protective order, including his contention that he did not receive notice of a hearing, no hearing for a

temporary protective order was conducted, and Fluegge did not sufficiently allege necessary facts in his affidavit supporting his application for a protective order to exclude Zbikowski from the family home.

Based on our review of the record, it is not clear whether a temporary protective order was issued. Nonetheless, even if the trial court granted a temporary protective order, it has since expired and been replaced by the final protective order. Generally, expired orders are considered moot on appellate review. *James v. Hubbard*, 21 S.W.3d 558, 560 (Tex. App.—San Antonio 2000, no pet.). Appellate courts lack jurisdiction to decide moot controversies. *See Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). Moreover, we do not have subject matter jurisdiction to resolve complaints about temporary protective orders that have been superseded by a final protective order. *See Ford v. Harbour*, No. 14-07-00832, 2009 WL 679672, at *2 (Tex. App.—Houston [14th Dist.] Mar. 17, 2009, no pet.) (mem. op.); *accord Lancaster v. Lancaster*, No. 01-14-00845-CV, 2015 WL 9480098, at *5 (Tex. App.—Houston [1st Dist.] Dec. 29, 2015, no pet.) (mem. op.). Any temporary protective order in this case was superseded by the August 27, 2024 final protective order.

Therefore, we do not further address Zbikowski's appellate issues as they pertain to a temporary protective order because they are moot.

### SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE TRIAL COURT'S GRANTING OF THE PROTECTIVE ORDER

*A. Standard of Review and Applicable Law*

We review the grant of a protective order for legal and factual sufficiency using the same standard we use in evaluating the sufficiency of the evidence following a jury verdict. *Hollimon v. Williams*, No. 01-22-00414-CV, 2023 WL 4710895, at *4 (Tex. App.—Houston [1st Dist.] July 25, 2023, pet. denied) (mem. op.); *Yang v. Cao*, 629 S.W.3d 666, 670 (Tex. App.—Houston [1st

Dist.] 2021, no pet.). When, as here, a party who does not have the burden of proof at trial challenges the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable factfinder could not. *Yang*, 629 S.W.3d at 670 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)); *City of Hous. v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998)).

We may sustain a legal sufficiency, or "no evidence" point, only if the record demonstrates (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Gabel v. Gabel-Koehne*, 649 S.W.3d 590, 599 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *City of Keller*, 168 S.W.3d at 810). If more than a scintilla of evidence exists to prove a vital fact, the evidence is legally sufficient, and we will overrule the issue. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005); *Hildebrandt*, 265 S.W.3d at 27. More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

For a party to successfully challenge the factual sufficiency of an adverse finding on an issue wherein he did not have the burden of proof, he must demonstrate that the adverse finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

*Hollimon*, 2023 WL 4710895, at \*4. In conducting a factual sufficiency review, we examine, consider, and weigh all evidence that supports or contradicts the factfinder's determination. *Id*.

"It is the [factfinder's] role to resolve conflicts in the evidence, and we may not substitute our judgment for that of the [factfinder]." *Id*. at \*5; *McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 698 (Tex. App.—Houston [1st Dist.] 2018, no pet.). After considering and weighing all the evidence, we will set aside the order only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is "clearly wrong and unjust." *Boyd v. Palmore*, 425 S.W.3d 425, 429 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Under the Family Code, a trial court may issue a protective order if it "finds that family violence has occurred." TEX. FAM. CODE ANN. § 81.001. For purposes of protective orders, "family violence" includes:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defense measures to protect oneself[.]

*Id.* § 71.004(1). "Family" "includes individuals related by consanguinity or affinity[.]" *Id.* § 71.003; *see also* TEX. GOV'T CODE ANN. § 573.022(a)(2) (providing that two individuals are related to each other by consanguinity if they share a common ancestor), § 573.024(a)(2) (providing that two individuals are related to each other by affinity if the spouse of one of the individuals is related by consanguinity to the other individual). "Household" means "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." TEX. FAM. CODE ANN. § 71.005. A "member of a household" "includes a person who previously lived in a household." *Id.* § 71.006.

"At the close of a hearing on an application for a protective order, the [trial] court shall find whether family violence has occurred." *Id.* § 85.001(a). If the trial court makes such a finding, the trial court shall render a protective order against the person found to have committed family violence. *See id.* § 85.001(b)(1). Only protective orders exceeding a two-year duration require a finding justifying the longer period. *See id.* § 85.001(d).

### B. Applicable Facts

Fluegge testified he requested the protective order after Zbikowski "laid hands" on Stasia, he intervened, and Zbikowski assaulted him. Fluegge added that Zbikowski continued to harass Fluegge and Stasia after the altercation, and Fluegge believed Zbikowski would cause future problems.

Specifically, with respect to the 2019 altercation, Fluegge explained that Zbikowski and Stasia began arguing about how their mother was handling their recently deceased father's estate and then the argument shifted to a fight about a video game console and video game. When the argument escalated and Zbikowski "put his hand around [Stasia's] throat," Fluegge intervened by stepping in between them and using his body weight to get Zbikowski away from Stasia. Zbikowski fell and landed face down. Fluegge then attempted to restrain Zbikowski face down on the floor until he calmed down. According to Fluegge, he told Zbikowski to calm down several times, and when Zbikowski somewhat stopped resisting, Fluegge let him go.

Zbikowski immediately charged at Fluegge causing him to fall to the floor on his back with Zbikowski's forearm across Fluegge's throat, impeding his breathing. Fluegge reported the pressure Zbikowski applied with his forearm to Fluegge's throat hurt, scared him, and caused his throat to be sore. Although Fluegge tried to calm Zbikowski and convince him to release him, Zbikowski continued the chokehold until Stasia retrieved her mother, Gale, who persuaded

Zbikowski to finally release Fluegge. As soon as Fluegge was free, he went outside and called the police. After the police interviewed everyone, the police arrested Zbikowski.

After Zbikowski's release from jail, he came back to live at Gale's house with everyone. Despite the attempts to peacefully coexist with Zbikowski, he made it increasingly more difficult. As the problems between Zbikowski and Fluegge and Stasia progressively worsened, Gale asked Zbikowski to leave, but he stayed. Fluegge explained Zbikowski's actions caused Fluegge and Stasia to become concerned for their safety.

When asked why he did not immediately seek a protective order following the 2019 altercation, Fluegge explained that Gale had requested Fluegge not seek a protective order against her son. Fluegge added that Zbikowski was also arrested in 2022 for reasons unrelated to Fluegge or Stasia but remained in jail until approximately July 2024 when Zbikowski was tried and acquitted for the 2019 altercation with Fluegge. Fluegge thus explained that in June 2024, as the July 2024 trial approached along with the uncertainty of Zbikowski's potential release, he sought the protective order because he felt unsafe, uncomfortable, harassed, and alarmed by Zbikowski's prior actions.

When Stasia testified, she explained that a combination of events led to the incident between her, Zbikowski, and Fluegge, including her belief that Zbikowski disrespects their mother, Gale. However, when she and Zbikowski began to argue over the video game console, their argument escalated quickly, and Zbikowski "went for [her] throat and neck" causing Fluegge to immediately respond. Stasia stated that after Fluegge forced Zbikowski away from her and to the floor, Fluegge told her to call the police, but Stasia went upstairs to retrieve Gale. Stasia corroborated Fluegge's account of Zbikowski's chokehold on him, stating Fluegge's eyes looked frightened, and that Zbikowski did not let go of Fluegge until after multiple requests to do so by

Gale. Stasia testified Fluegge went outside and called the police and Zbikowski remained inside, pacing and cursing until finally going upstairs to his room before the police arrived. Although Stasia expressed empathy for Gale regarding Zbikowski, Stasia stated she could not be around her brother any longer because he made her feel uncomfortable.

Gale also testified and corroborated Fluegge's and Stasia's testimony regarding the 2019 altercation and Zbikowski's constant recording of family members. While Gale agreed to have the protective order apply to her residence and wanted Zbikowski to move out due to his behavior, Gale did not want to be listed on the protective order so she could continue to have contact with her son.

Zbikowski acknowledged that during his physical altercation with Fluegge and after Fluegge released him, Zbikowski managed to place Fluegge in a chokehold. Nonetheless, Zbikowski claimed his actions were merely defensive and that his subsequent acquittal regarding the altercation should prevent the issuance of the protective order.

*C. Analysis*

Zbikowski and Fluegge are family members as well as members of the same household. *See* TEX. FAM. CODE ANN. §§ 71.003, 71.005, 71.006. And an adult member of the family or household may apply for a protective order for themselves or another member of the applicant's family or household. *See id.* § 82.002(a). A prosecuting attorney may file an application for protective order on behalf of any person alleged to be a victim of family violence, and the person alleging to be a victim of family violence in this circumstance is considered the applicant. *See id.* § 82.002(d)(1), (e). Here, a prosecutor with the Bexar County Criminal District Attorney's Office filed the application for a protective order on behalf of Fluegge, the applicant. *See id.*

With respect to Zbikowski's complaint that Fluegge did not timely seek the protective order, suggesting that Fluegge was required to seek protection within thirty-days of the alleged family violence, Zbikowski confuses the requirements necessary to seek a temporary protective order that excludes a person from a residence with the requirements of a final protective order. *See id.* § 83.006(a), (b) (requiring commission of family violence against member of household within preceding thirty days by person to be excluded from his residence before trial court may render temporary ex parte order). An application for and the issuance of a final protective order do not contain the same requirement. *See id.* §§ 82.002, 82.004, 85.001.

Additionally, Zbikowski argues that he did not commit family violence against Fluegge because he was defending himself as evidenced by being acquitted in his trial for assaulting Fluegge. To the contrary, Fluegge and Stasia testified Fluegge first came to Stasia's defense when Zbikowski grabbed Stasia by the throat. After Fluegge released Zbikowski attempting to deescalate the situation, Zbikowski charged at Fluegge causing them to fall to the floor. Fluegge testified he was scared when Zbikowski had him in a chokehold, and the longer Zbikowski held him, the more difficult it became to breathe. Stasia explained Fluegge looked frightened during the altercation, and she too was scared, fearing Zbikowski was going to "snap" Fluegge's neck. Also, Gale acknowledged the gravity of the situation requiring her to persuade Zbikowski to release Fluegge. Furthermore, Fluegge and Stasia testified that during the time frame between Zbikowski's release from jail after his initial arrest for the 2019 altercation and before his subsequent 2022 unrelated arrest, Zbikowski continued exhibiting hostile behavior towards them, causing Fluegge to be concerned for his and his wife's safety. Gale witnessed some of this behavior as well, even requesting Zbikowski move out of her house.

Here, we are not bound by the legal sufficiency standards of review applicable to criminal convictions. Rather, we determine whether, after indulging every reasonable inference in favor of the finding, more than a scintilla of evidence supports the trial court's finding that "family violence has occurred." *Hollimon*, 2023 WL 4710895, at **4–5; *Yang*, 629 S.W.3d at 670; *see also* TEX. FAM. CODE ANN. § 85.001(a). Moreover, it is not necessary that the evidence reveal multiple instances of family violence, one act is sufficient. *See Maples v. Maples*, 601 S.W.3d 23, 28 (Tex. App.—Tyler 2020, no pet.) ("[T]he statutory language does not require that a likelihood finding be based on more than one act of family violence."); *see also* TEX. FAM. CODE ANN. §§ 71.004(1), 81.001, 85.001(a); *Boyd*, 425 S.W.3d at 430 (recognizing statutory language does not require family violence finding be based on more than one act of family violence as courts have determined that "[o]ftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order").

Thus, under these circumstances, it was reasonable for the trial court to determine Zbikowski's actions towards Fluegge were intended to result in physical harm, bodily injury, or assault, or that his actions placed Fluegge in fear of imminent physical harm, bodily injury, or assault. *See* TEX. FAM. CODE ANN. § 71.004(1). The trial court reasonably concluded that Fluegge's initial reaction to Zbikowski's grabbing Fluegge's wife by the throat was defensive, whereas Zbikowski's physical reaction to Fluegge was not a defensive measure taken to defend himself. *See id.*

Viewing the evidence under the applicable standards of review, we conclude the trial court had reasonable grounds to believe that Zbikowski committed family violence. *See* TEX. FAM. CODE ANN. §§ 71.004(1), 81.001, 85.001(a). Accordingly, the evidence was legally and factually sufficient to support the trial court's finding that Zbikowski committed family violence to

authorize the granting of a protective order against him under the Texas Family Code. *See id.* § 85.001(a), (b)(1). And because the duration of the trial court's protective order did not exceed two years, no additional finding was necessary. *See id.* § 85.001(d).

Zbikowski also challenges the protective order itself, specifically pointing out that on page one Stasia is listed as a protected person under the heading for minor protected persons. We note the evidence supports that Stasia, Fluegge's spouse and Zbikowski's sister, is an adult and not a minor. However, the protective order provides for the protection of other persons as well. We note this does not constitute a substantive error involving the trial court's discernment. We modify the protective order to name Stasia under the appropriate heading as set forth in the conclusion below. *See Barecky v. State*, 639 S.W.2d 943, 945 (Tex. Crim. App. 1982) (explaining that if the reviewing court has the same information for reforming or correcting a judgment as the trial court would have were the judgment reversed, an appellate court has the power to reform and correct the judgment as the law and the nature of the case may require).

Furthermore, Zbikowski argues the additional finding on page five of the protective order that finds he "poses a credible threat to [Fluegge's] physical safety" cannot be supported because the finding would also indicate he and Fluegge, are "current and/or former intimate partner[s.]" The evidence clearly indicates that Zbikowski and Fluegge are family members related to one another because Fluegge is married to Zbikowski's sister, Stasia. Absolutely no evidence indicates Zbikowski and Fluegge have ever had any romantic involvement with one another. We modify the protective order as set forth in the conclusion below resulting in the deletion of this additional finding. *See Yang*, 629 S.W.3d at 672 (providing when "an affirmative finding has been improperly entered in the judgment, appellate courts may reform the judgment by deleting the finding) (citing *Easterling v. State*, 710 S.W.2d 569, 582 (Tex. Crim. App. 1986)); *see also Dessens v. Argeroplos*,

658 S.W.3d 438, 448–49, 450–52 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (reviewing conditions contained in a protective order for an abuse of discretion and modifying unsupported conditions).

With the exceptions to the modifications to the protective order indicated above, we overrule Zbikowski's appellate issues challenging the sufficiency of the evidence supporting the trial court's granting of the protective order and his complaints regarding the form, scope, and duration of the protective order. We affirm the final protective order as modified.

## CONCLUSION

On page one, the protective order shall be modified by moving "a. Stasia Zbikowski" from under the heading labeled: "3. And/or on Behalf of Minor Family Members/Protected Person(s) (Provide the name for each minor added)" and placing it under the heading labeled: "4. And/or on Behalf of Other (Protected Person(s) (Provide the name for each person added)[.]"

Furthermore, on page five, the protective order shall be modified to delete the "X" in the box and leave the box blank in the heading labeled: "1) Additional Finding – Credible Threat[.]"

Zbikowski's complaints pertaining to a temporary protective order, if any, are moot. We affirm the trial court's final protective order as modified. *See* TEX. R. APP. P. 43.2(b).

Irene Rios, Justice