**Opinion issued November 26, 2024**



In The

# Court of Appeals

For The

## First District of Texas

——————————————

### NO. 01-22-00869-CV

——————————————

**JEROMY HENRY, Appellant**

**V.**

**TERESA VAELLA, Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-43568**

---

### MEMORANDUM OPINION

Appellant, Jeromy Henry, appeals the trial court's lifetime family-violence protective order rendered against him. In five issues, he argues that (1) the trial court abused its discretion in requiring him to proceed to trial "even though he asked if he could have an attorney"; (2) the trial court should have granted a

continuance because he "lacked sufficient notice of the trial setting"; (3) he is entitled to remand for a new trial "in light of evidence that shows [that the applicant, appellee, Teresa Vaella] lied under oath and her lies caused harm to [Henry]"; (4) the evidence was legally and factually insufficient "to support the judgment for a lifetime no contact order under the facts of this case"; and (5) the protective order violated his Second Amendment right to keep and bear arms.

We affirm.

## Background

Vaella applied for a protective order against Henry on July 21, 2022. The citation and notice of application for protective order identified August 10, 2022, via zoom, as the date and location for the hearing on the protective order. The return of service contained in the record reflects that this notice was served in person on Henry on July 26, 2022.

The trial court then granted a temporary protective order on August 4, 2022, and rescheduled the hearing on the protective order for August 17, 2022, via zoom. At the hearing on August 17, 2022, Henry appeared pro se, and Vaella was represented by an attorney from the Harris County District Attorney's Office.

Vaella testified that she and Henry dated for a "little more than nine and a half years," and that during the time they dated, he assaulted and threatened her on more than one occasion. She specifically recounted one occasion sometime in June

2022 when Henry was having "a bad day." Vaella testified that Henry told her he was kicking her out of the house and "was breaking things and throwing things at [her]." She further testified, "[H]e picked me up and he squeezed me around my waist and caused me to urinate on myself." Vaella also testified that he used an "exacto knife, his art supply exacto knife" that "[h]as a razor blade" to threaten her and left a "tap mark" on her forehead. She described this as "an escalated, heated event."

Vaella testified about another incident in which Henry "was trying to take [her] work bag" while she was carrying multiple bags. She testified, "[W]hen he knocked me off balance, it pulled my forearm and it just pinched it all together." She stated that she sustained bruising to her forearm, "from the back of [her] elbow to [her] wrist area." Vaella presented further evidence that Henry was charged with the felony offense of robbery in connection with this incident. This charge remained pending at the time of the protective order hearing.

Vaella also testified regarding an occasion after this when Henry "was waiting at the house," and she "didn't know he was popping in for a surprise, so [she] saw him at the last minute." When she turned around to drive away, he chased her in his vehicle. She testified that she was afraid, stating, "He was pulling up on my car and trying to get me to roll my window down, trying to block me from being able to go. Just kind of being aggressive. Every time I U-turned, he

would U-turn with me." On another occasion, she was driving on I-45 and "he came up behind me in his vehicle out of nowhere[.]" Vaella testified that Henry "sped up and got on [her] bumper and then pulled to [her] side." She did not acknowledge him, and he "tried to get close to [her] vehicle" and "ran [her] off a little bit" before she was able to return to her lane.

Henry testified as well, contradicting some of Vaella's testimony. He denied strangling her or hurting her. He testified that, when he saw her on I-45, he was not "trying to follow her in any way," but he "was just on [his] way to work." He denied driving recklessly, stating that he wanted "to follow her, only in an attempt to try to communicate with her because she would not communicate with [him] on the phone." He testified, "I told [Vaella] many times that she can contact me if she had any issues and she refused to. She also refused to take my calls when I tried to work things out with her." Henry further testified that he believed that Vaella "is just trying to, like I said, create this case so that she can get back at me for the fact that I told her that I did not want to stay with her."

He stated that he had no intention to harass or contact Vaella. He testified that he had made no attempts to contact her over the two months prior to the hearing on the protective order, and he had complied with all of his bond conditions in connection with the robbery charge. He further stated that he did not believe that the trial court should grant the protective order for more than a two-

4

year period or restrict his Second Amendment right. He testified that he did not own a gun or intend to carry a weapon but "should have the right to have one in his [home] to protect [his] family."

Vaella offered into evidence photos of her injuries and the probable cause affidavit related to Henry's pending charge for robbery. That affidavit stated that Henry came to the residence that he had shared with Vaella to pack his belongings and became angry when he could not find his guitar. Henry became "upset and he began attempting to take her items" by grabbing a bag from her arm. Vaella reported that she told Henry he could not take her items and that nothing in the bag that he took belonged to Henry. Vaella also introduced her declaration outlining the incidents giving rise to her request for a protective order, the details of which largely matched her testimony during the hearing. On cross-examination, the assistant district attorney representing Vaella in the protective order hearing questioned Henry about an incident that occurred in May 2020 that resulted in a charge of assault of a family member against him. Henry testified that he completed a Battering Intervention and Prevention Program (BIPP) and the case was dismissed.

The trial court granted the protective order, finding on the record that Vaella and Henry "were members of the same family or household [and] were previously dating." The trial court stated its finding that Henry committed family violence,

that Henry's conduct "could constitute a felony if he were charged, he is currently charged with a felony where [Vaella] is the complaining witness," and that family violence is likely to occur in the future. Based on these findings, the trial court determined that the protective order be granted for Henry's lifetime, including a prohibition against owning or possessing firearms or ammunition.

The trial court signed the protective order on August 22, 2022, and the signed order also contained the following findings: (1) Henry and Vaella "were previously involved in a dating relationship or dating violence"; (2) "family violence has occurred" and "is likely to occur again in the future"; (3) Henry "committed family violence." The trial court further found that Henry's "conduct was an act constituting a felony offense involving family violence against the applicant [Vaella] . . . , regardless of whether the person has been charged with or convicted of the offense; and or caused serious bodily injury to the applicant[.]" Among other things, the protective order prohibited Henry from possessing a firearm. It also required that he successfully complete a BIPP, submit to a psychological evaluation and a psychiatric examination, and return the bags "that are in his possession that belong to [Vaella]." Finally, the trial court made the protective order effective immediately and ordered that it "shall continue in effect for the lifetime of the Respondent [Henry]."

6

Henry obtained counsel and moved for a new trial, arguing that the evidence was legally and factually insufficient to support the trial court's findings that Henry committed family violence and that the act constituted a felony offense. He argued that he was entitled to a new trial based on "newly discovered evidence." Nothing in the motion identified the nature of the newly discovered evidence. Henry did not file an affidavit or any other evidence with his motion for new trial.

The trial court denied the motion for new trial. This appeal followed.

## Protective Orders under the Family Code

The trial court rendered a final protective order pursuant to Family Code chapter 85 as it was in effect at the time of rendition,[1] which provided, in relevant part:

(a) At the close of a hearing on an application for a protective order, the court shall find whether:

(1) family violence has occurred; and

(2) family violence is likely to occur in the future.

(b) If the court finds that family violence has occurred and that family violence is likely to occur in the future, the court:

---

[1] We cite to the version of the Family Code in effect when the order in this case was rendered. The legislature amended section 85.001, effective September 1, 2023, removing the requirement that the trial court make a likelihood-of-future-violence finding. *See* Act of May 24, 2023, 88th Leg., R.S., Ch. 688, §§ 8,9, 2023 Tex. Sess. Law Serv. C. 688, §§ 8, 9 (H.B. 1432).

(1) shall render a protective order as provided by Section 85.022 applying only to a person found to have committed family violence; and

(2) may render a protective order as provided by Section 85.021 applying to both parties that is in the best interest of the person protected by the order or member of the family or household of the person protected by the order.

TEX. FAM. CODE § 85.001 (former version). In relevant part, "family violence" is defined as:

[A]n act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

*Id.* § 71.004(1); *see Rodriguez v. Doe*, 614 S.W.3d 380, 385 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

A finding that family violence is likely to occur in the future can be based on a single act of past family violence. *See Boyd v. Palmore*, 425 S.W.3d 425, 432 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.) ("Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order.").

"We review a trial court's findings in a protective order proceeding that family violence has occurred and is likely to occur in the future for legal and

factual sufficiency." *Dolgener v. Dolgener*, 651 S.W.3d 242, 256 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see Caballero v. Caballero*, No. 14-16-00513-CV, 2017 WL 6374724, at *3 (Tex. App.—Houston [14th Dist.] Dec. 14, 2017, no pet.) (mem. op.).

### Right to Continuance

In his first issue, Henry argues that the trial court abused its discretion in requiring him to proceed to trial "even though he asked if he could have an attorney." The record does not indicate that Henry made a request for appointed counsel, nor does it contain a request or motion for continuance. At the beginning of the hearing on the protective order, the trial court made the following comment regarding a prior discussion:

> We had a discussion off the record about whether or not Mr. Henry could have a lawyer go over the order with him before he signed it. I told him that we were not going to reset the matter, that he could either—whatever of his choosing, either agree to the protective order or we could have a trial.

Thus, the record demonstrates that Henry had some sort of off-record discussion about his access to counsel with the trial court before the hearing, but he did not file any motions or make any requests on the record for either appointed counsel or a continuance so that he could obtain counsel.

Henry acknowledges that there is no rule or statute providing for a right to appointed counsel in a protective order hearing. Civil litigants are generally not

9

entitled to appointed counsel absent a legislative mandate. *See Gibson v. Tolbert*, 102 S.W.3d 710, 712 (Tex. 2003); *Abbas v. al Rubaiee*, No. 14-20-00315-CV, 2021 WL 6141212, at *2 (Tex. App.—Houston [14th Dist.] Dec. 30, 2021, pet. denied) (mem. op.). While trial courts are statutorily authorized to appoint counsel in some civil matters, *see e.g.*, TEX. FAM. CODE § 107.013(a) (providing court must appoint counsel to represent indigent parent opposing termination of parent-child relationship); *id.* § 51.10(f) (establishing power to appoint counsel in juvenile-delinquency cases), Henry had no statutory or constitutional right to have counsel appointed for him in the protective-order proceeding. *See* TEX. FAM. CODE §§ 71.001–93.004; *see also Culver v. Culver*, 360 S.W.3d 526, 535 (Tex. App.—Tyler 2011, no pet.) (noting there is no right to effective assistance of counsel in protective-order proceeding); *Abbas*, 2021 WL 6141212, at *2 (same).

Nevertheless, Henry argues that the trial court erred in requiring him to proceed without counsel. We conclude that Henry did not preserve any complaint regarding this issue. To present a complaint for appellate review, the record must show a complaint was communicated to the trial court by a timely motion, request, or objection. TEX. R. APP. P. 33.1(a). When a movant seeks a continuance of a trial or hearing, Texas Rule of Civil Procedure 251 requires the party to show sufficient cause supported by affidavit, consent of the parties, or operation of law as support for its motion. TEX. R. CIV. P. 251; *see Abbas*, 2021 WL 6141212, at *3; *see also*

10

*Bryant v. Jeter*, 341 S.W.3d 447, 450–51 (Tex. App.—Dallas 2011, no pet.) (as prerequisite to complaining on appeal about denial of motion for continuance, record must show that motion was brought to trial court's attention and that trial court denied motion or refused to rule on motion and complaining party objected to refusal).

"In Texas, an individual has the option of appearing in person or by an attorney." *Abbas*, 2021 WL 6141212, at *2 (citing TEX. R. CIV. P. 7; *Kunstoplast of Am., Inc. v. Formosa Plastics Corp.*, 937 S.W.2d 455, 456 (Tex. 1996)). Here, Henry appeared in person without counsel. He did not make any request on the record regarding his right to appear through an attorney or to have an attorney represent him. He did not file a motion for continuance or orally seek additional time to obtain counsel. Accordingly, we conclude that he failed to preserve this complaint for consideration on appeal because we have no ruling or refusal to rule to evaluate. *See* TEX. R. APP. P. 33.1; *Abbas*, 2021 WL 6141212, at *3 (holding, where party was told by trial court that lawyer could not be appointed to him, that party failed to preserve complaint because he did not file motion for continuance or otherwise request additional time to obtain lawyer).

Henry also argues generally that he represented himself and, as a pro se litigant, he did not know how to comply with the rules of error preservation. However, pro se litigants are held to the same standards as licensed attorneys and

11

must comply with applicable laws and rules of procedure. *See Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (per curiam). This includes error preservation rules. *See Riecke v. Riecke*, No. 09-22-00142-CV, 2023 WL 2802256 at *2, (Tex. App.—Beaumont Apr. 6, 2023, no pet.) (mem. op.); *Harrison v. Reiner*, 607 S.W.3d 450, 464 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). Thus, Henry's status as a pro se litigant does not relieve him of the general requirement that he make the trial court aware of the relief that he believed he was entitled to. *See Wheeler*, 157 S.W.3d at 444; *Harrison*, 607 S.W.3d at 464.

We overrule Henry's first issue.

In his second issue, Henry argues that the trial court should have granted a continuance because he "lacked sufficient notice of the trial setting." The Family Code provides that notice of an application for a protective order must be served in the same manner as citation under the Texas Rules of Civil Procedure. TEX. FAM. CODE § 82.043(c); *see also* TEX. R. CIV. P. 99 (providing rules for issuance and form of citation), 106 (method of service), 107 (return of service); *Pilcher v. Maddox*, 695 S.W.3d 683, 686 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (discussing service and notice requirements for applications for protective orders under Family Code). The Family Code also requires that the trial court hold the hearing on an application for protective order within 14 days of when it is filed. TEX. FAM. CODE § 84.001.

Finally, the Family Code provides:

> If a respondent receives service of notice of an application for a protective order within 48 hours before the time set for the hearing [on an application for protective order], on request by the respondent, the court shall reschedule the hearing for a date not later than 14 days after the date set for hearing.

*Id.* § 84.004(a).

We first observe the record on appeal was supplemented to include the return of service indicating that Henry was served with notice on July 26, 2022, four days after Vaella filed her application on July 21, and more than 48 hours before the August 10 and August 17 hearing settings. *See Plicher*, 695 S.W.3d at 686 (holding that courts determine whether service of notice complied with governing rules de novo). Thus, the record reflects that Henry received notice, appeared, and participated in the hearing. *See* TEX. R. CIV. P. 120 (providing that party can waive defects in service by entering general appearance; general appearance "shall have the same force and effect as if the citation had been duly issued and served as provided by law"); *see also Guardianship of Farley*, 650 S.W.3d 372, 386 (Tex. 2022) (explaining that party's appearance in lawsuit "cures any defect in the method of serving that party").

We further observe that Henry did not raise any complaint about the adequacy of service, nor did he request that the trial court reset the hearing due to an inadequacy of service. *See Bryant*, 341 S.W.3d at 450–51 (as prerequisite to

13

complaining on appeal about denial of motion for continuance, record must show that motion was brought to trial court's attention and that trial court denied motion or refused to rule on motion and complaining party objected to refusal). And even if he had requested additional time, which he did not, he received notice more than 48 hours before the date the hearing was set and therefore was not entitled to the additional time provided for in section 84.004(a).

We overrule Henry's second issue.

## Sufficiency of the Evidence

In his third and fourth issues, Henry attacks the sufficiency of the evidence supporting the trial court's findings in the protective order. "We review the sufficiency of a trial court's findings supporting a protective order under the same standards we use in evaluating the sufficiency of evidence following a jury verdict." *Hollimon v. Williams*, No, 01-22-00414-CV, 2023 WL 4710895, at *4 (Tex. App.—Houston [1st Dist.] July 25, 2023, pet. denied) (mem. op.) (citing *Lei Yang v. Yuzhuo Cao*, 629 S.W.3d 666, 670 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Thus, an appellant, like Henry, who attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof must demonstrate that no evidence supports the finding. *Id.* (citing *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011)). We will sustain a legal-sufficiency or "no-evidence" challenge if the record shows one of the

following: (1) a complete absence of evidence of a vital fact; (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Hollimon*, 2023 WL 4710895, at *4. We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *City of Keller*, 168 S.W.3d at 822; *Hollimon*, 2023 WL 4710895, at *4.

"When a party attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate that the adverse finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Hollimon*, 2023 WL 4710895, at *4 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Estrada v. Cheshire*, 470 S.W.3d 109, 120 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)). In conducting a factual-sufficiency review, we examine, consider, and weigh all evidence that supports or contradicts the fact finder's determination. *Id.* (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)).

"We are mindful that the trial court, as the fact finder in a bench trial, is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Id.* at *5 (citing *City of Keller*, 168 S.W.3d at 819; *McKeehan v.*

15

*Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 698 (Tex. App.—Houston [1st Dist.] 2018, no pet.)). The trial court may choose to believe one witness and disbelieve another, and it is the fact finder's role to resolve conflicts in the evidence. *Id.* (citing *McKeehan*, 554 S.W.3d at 698; *City of Keller*, 168 S.W.3d at 819). We may not substitute our judgment for that of the fact finder. *Id.*; *McKeehan*, 554 S.W.3d at 698.

In his third issue, Henry argues that this Court should remand for a new trial "in light of evidence that shows [Vaella] lied under oath and her lies caused harm to [Henry]." He further argued that he "lacked the necessary skill and knowledge to cross examine [Vaella] effectively" regarding inconsistencies between her testimony at the hearing and the statement in the affidavit of probable cause admitted into evidence. He points to concerns such as Vaella's testimony that the incident in June that resulted in the robbery charge and bruised Vaella's arm started because Henry "had a bad day," but her statement as reflected in the probable cause affidavit was that she caught Henry cheating and decided to separate from him, leading to his anger. The affidavit stated that Vaella and Henry had a son together, stating this was "another fact she failed to mention to the [judge in the] 280th—and a fact incidentally, that is a blatant lie." Henry also argues that Vaella's testimony at trial and the statement in the affidavit conflicted regarding

whether "Henry wrapped the straps of her work bag around her arm," or whether "he snatched the work bag from her arm causing bruising."

Henry did not object to Vaella's testimony on this basis, nor did he object to the admissibility of the probable cause affidavit. He was permitted time to cross examine Vaella and to provide his own testimony regarding these matters. *See Wheeler*, 157 S.W.3d at 444 (holding that pro se litigants are not exempt from rules of procedure). Thus, these inconsistencies in the evidence were before the trial court, who acted as the factfinder. It was the job of the trial court, as factfinder, to judge the credibility of the witnesses, determine the weight to be given their testimony, and resolve conflicts in the evidence. *See Hollimon*, 2023 WL 4710895, at *5 (citing *City of Keller*, 168 S.W.3d at 819; *McKeehan*, 554 S.W.3d at 698). This conflicting evidence, by itself, is not sufficient to warrant reversal of the trial court's order. *See id.* (appellate court may not substitute our judgment for that of fact finder); *see also Estrada*, 470 S.W.3d at 120 (providing standard for factual sufficiency, holding that challenging party must prove that adverse finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust).

In his fourth issue, Henry argues that the evidence was legally and factually insufficient "to support the judgment for a lifetime no contact order under the facts of this case." Family Code section 85.025(a) states that "[e]xcept as otherwise

17

provided by this section, an order under this subtitle is effective: (1) for the period stated in the order, not to exceed two years; or (2) if a period is not stated in the order, until the second anniversary of the date the order was issued." TEX. FAM. CODE § 85.025(a); *Lei Yang*, 629 S.W.3d at 669.

Section 85.025(a-1), however, states that the "court may render a protective order sufficient to protect the applicant and members of the applicant's family or household that is effective for a period that exceeds two years" under certain enumerated circumstances, including if the court finds that the person who is the subject of the protective order "committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household, regardless of whether the person has been charged with or convicted of the offense." TEX. FAM. CODE 85.025(a-1); *see also id.* § 85.001(d) (providing that if court renders protective order for period of more than two years, it must include in protective order finding described by section 85.025(a-1)).

Relevant here, the trial court found that Henry "committed family violence." The trial court further found that Henry's "conduct was an act constituting a felony offense involving family violence against the applicant [Vaella] . . . , regardless of whether the person has been charged with or convicted of the offense; and or caused serious bodily injury to the applicant[.]" Henry describes this finding in his appellate brief as "a conclusory finding based on the mere fact that [he] had been

18

charged with a criminal offense after shooting down [his] ineffective attempts at cross examination and evidence presentation and denying his request for an attorney." Henry points out that the felony charge was for robbery, and in course of committing that robbery, intentional, knowing, or reckless infliction of bodily injury, and he argues that the robbery charge was "the direct product of Vaella's false statements to police investigators" that she and Henry had a child together, she caught him cheating on her, and that she had wrapped the straps of the bag around her arm before Henry snatched the bag away. This argument by Henry does not accurately reflect the trial court's finding and the evidence supporting it.

First, we observe that the trial court did not identify in its finding which incident or incidents it considered to be "conduct [that] was an act constituting a felony offense involving family violence against the applicant [Vaella.]" Vaella testified regarding more than one assault. She testified about one incident in which Henry "squeezed [her] around [her] waist and caused [her] to urinate on [her]self," and then used an "exacto knife, his art supply exacto knife" that "[h]as a razor blade" to threaten her, leaving a "tap mark" on her forehead.

Vaella also testified about an incident in which Henry "was trying to take [her] work bag" while she was carrying multiple bags. She testified, "[W]hen he knocked me off balance, it pulled my forearm and it just pinched it all together." She stated that she sustained bruising to her forearm, "from the back of [her] elbow

19

to [her] wrist area." This was the incident that resulted in the felony robbery charge that was pending at the time of the hearing.

Vaella's testimony regarding either of these incidents supports the trial court's finding that Henry engaged in conduct constituting a felony offense involving family violence against Vaella. The trial court could have determined that threatening Vaella with a knife constituted a felony offense involving domestic violence. *See* TEX. PENAL CODE § 22.02(a)(2) (providing that person commits offense of aggravated assault if he commits assault as defined in section 22.01 and "uses or exhibits a deadly weapon during the commission of the assault"), *id.* § 22.02(b) (aggravated assault is second degree felony); *see also id.* § 22.01(a)(2), (3) (providing that person commits assault by "intentionally or knowingly threaten[ing] another with imminent bodily injury, including the person's spouse," or by "intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative"). It was not necessary for Henry to have been charged with or convicted of the offense in order to meet the requirements for extending the protective order for more than two years. *See* TEX. FAM. CODE § 85.025(a-1) (providing that trial court can render protective order effective for more than two years if it finds that respondent "committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's

20

family or household, *regardless of whether the person has been charged with or convicted of the offense*") (emphasis added)).

Vaella's testimony regarding the occasion on which Henry forcibly took her bags from her, bruising her arm in the process, could also support a finding that Henry committed a felony offense that involved family violence. *See* TEX. PENAL CODE § 29.02 (providing that that person commits offense of robbery—a second degree felony—if, in course of committing theft and with intent to obtain or maintain control of property, he intentionally, knowingly, or recklessly causes bodily injury to another or threatens or places another in fear of imminent bodily injury or death). To the extent that Henry is arguing that the trial court erred in finding that this robbery incident involved family violence, we observe that Vaella's testimony indicated that Henry was violent toward her, including by knocking her off balance and bruising her arm, in the course of committing the robbery. *See* TEX. FAM. CODE § 71.004(1) (defining family violence as act intended to result in physical harm or that is threat that reasonably places family member in fear of imminent physical harm).

Although Henry contests Vaella's testimony regarding this incident, the trial court was the sole just of the credibility of the witness and was charged with resolving any inconsistencies in the evidence. *See Hollimon*, 2023 WL 4710895, at *5 (holding that "trial court, as the fact finder in a bench trial, is the sole judge of

21

the credibility of the witnesses and the weight to be given their testimony"; that trial court may choose to believe one witness and disbelieve another; and that it is fact finder's role to resolve conflicts in evidence).

We conclude that Henry has failed to meet his burden of demonstrating that no evidence supports the challenged findings. *See Hollimon*, 2023 WL 4710895, at *4. We further conclude that Henry failed to demonstrate that the adverse findings were so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* We therefore overrule Henry's third and fourth issues challenging the sufficiency of the evidence to support the trial court's order.

## Second Amendment Complaint

In his fifth issue, Henry argues in a conclusory manner that the order violated his Second Amendment right to keep and bear arms. The entirety of his briefing on this topic is as follows:

> The US Supreme Court case of *New York State Rifle and Pistol Association Inc. v. Kevin P. Bruen*, 142 S.Ct. 2111 (June 23, 2022) taken together with the recent decision in *US v. Litsson Antonio Perez-Gallan*, 2022 WL 16858516 (W.D. Texas – [Pecos] November 10, 2022) change the landscape of due process law, protective orders, and restrictions on rights to keep and bear arms for persons against whom protective orders have been rendered in uncharted ways. The 2nd and 14th Amendments guarantee citizens certain rights … [.][2]

---

[2] We note that this area of the law has continued to evolve since the parties filed their briefs in this case. The Fifth Circuit subsequently affirmed the judgment of the district court dismissing the indictment in *U.S. v. Perez-Gallan*. No. 22-51019, 2023 WL 4932111, at *1 (5th Cir., Aug. 2, 2023) (per curiam). However, the United States Supreme Court vacated the Fifth Circuit's judgment and remanded

We first observe that Henry did not object to the protective order on constitutional grounds in the trial court. *See Hollimon*, 2023 WL 4710895, at *7 n.5; *see also* TEX. R. APP. P. 33.1(a) (setting out requirements for preservation of complaints); *Jacquot v. Coker*, No. 14-20-00123-CV, 2022 WL 1180138, at *9 (Tex. App.—Houston [14th Dist.] Apr. 21, 2022, no pet.) (mem. op.) ("Even constitutional claims . . . can be waived without a proper objection."); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal.").

Henry also failed to adequately present this argument for consideration on appeal. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). "Conclusory assertions of constitutional violations unsupported by citations to relevant authorities, as here, are inadequately briefed." *Caldwell v. State for Zimmerman*, No. 03-22-00464-CV, 2024 WL 3906789, at *11 (Tex. App.—Austin Aug. 23, 2024, no pet.) (mem. op.) (citing TEX. R. APP. P. 38.1(i)); *see Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—

---

the case to that court for further consideration in light of *U.S. v. Rahimi*, 144 S. Ct. 1889 (2024), which held, in another case involving a charge of possessing a firearm while subject to a domestic-violence restraining order, that the statute under which the defendant was convicted was facially constitutional under Second Amendment. *See U.S. v. Perez-Gallan*, 144 S. Ct. 2707, 2708 (2024).

Houston [14th Dist.] 2008, no pet.) (noting that failure to "provide substantive analysis of the legal issues presented results in waiver of the complaint"). "We may not place ourselves in the role of [a party's] advocate and attempt to identify and explain an alleged error on his behalf." *Caldwell*, 2024 WL 3906789, at \*11; *see Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) ("An appellate court has no duty—or even right—to perform an independent review of the record and applicable law to determine whether there was error" and to do so, "even on behalf of a pro se appellant, . . . would be [to] abandon[] our role as neutral adjudicators." (internal citation omitted)).

Accordingly, Henry's fifth issues is waived, and we overrule it.

## Conclusion

We affirm the order of the trial court.

Richard Hightower
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.